**David R. RIPLEY, Respondent,**

v.

**Bonnie Jean PIEHL, Trustee, et al., Defendants,**

**Option One Mortgage Corporation, Appellant.**

No. A04–1962.

Court of Appeals of Minnesota.

July 26, 2005.

Ralph L. Moore, Stein Moore, P.A., St. Paul, MN, for respondent.

Bradley N. Beisel, Beisel Dunlevy, PA, Minneapolis, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; SCHUMACHER, Judge; and WRIGHT, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

In this mortgage-priority dispute, appellant Option One Mortgage Corporation challenges the district court's judgment that respondent David R. Ripley's mortgage against the subject property is prior to and superior to its own. Option One argues it should be equitably subrogated to the interests of the creditors and lienholders it paid off when it acquired a mortgage against the property without performing a title search sufficient to discover the existence of Ripley's prior recorded interest. In the alternative, Option One argues Ripley's mortgage should be equitably subordinated to its own. We affirm.

## FACTS

In 1995, Gregory M. Hewitt purchased a parcel of real estate in Finland, Minnesota, and financed the purchase by way of a contract for deed. By the fall of 2002, the total value of the property was between $300,000 and $350,000; the encumbrances against the property—consisting of two federal tax liens and the vendor's contract-for-deed interest—exceeded $242,000. In order to pay off the encumbrances, Hewitt sought to refinance the property. In November 2002, he applied for a mortgage with Lake Superior Mortgage Company, which submitted the application to Option One. Lake Superior hired Pioneer Abstract and Title of Duluth, Inc. to perform the title work and conduct the closing. On December 2, Pioneer Abstract conducted a title search and identified the encum-

brances. On December 5, Option One conditionally agreed to loan Hewitt $267,750 in exchange for a 30–year mortgage.

At the same time Hewitt applied for the loan from Lake Superior, he owed Ripley, a business associate, more than $250,000. While his mortgage application was pending, Hewitt informed Ripley he planned to partially repay him with the proceeds from the refinancing, which he told Ripley would total approximately $60,000. On December 1, Hewitt and Ripley signed a written agreement, which stated Hewitt agreed to "assign the full amount of [his] equity in [the property], after the IRS and the original note have been paid by the escrow agent, to Ripley." The agreement provided that although Hewitt had previously promised to pay Ripley $60,000, "under no circumstances shall [the amount paid] be less than $25,000." When the refinancing had not yet occurred by January 2, 2003, Ripley requested and received from Hewitt a $250,000 mortgage against the property. Ripley recorded the mortgage on January 3. On January 28, Hewitt gave Ripley a quitclaim deed to the property.

The Option One mortgage closed on January 31. In the four weeks between the date that Ripley recorded his mortgage and the date of the Option One closing, Pioneer Abstract did not perform, and Option One and Lake Superior did not request an updated title search. Neither Hewitt nor Ripley informed Option One during that period that Hewitt had granted Ripley a mortgage against the property. Option One was unaware at the closing that Ripley had acquired and recorded a mortgage against the property.

At the closing, Pioneer Abstract received approximately $270,000 from Option One. The closing statement reflects that the closing agent used those funds to immediately pay off the contract for deed and the tax liens, which together totaled approximately $242,000. Hewitt received approximately $15,000, which he subsequently paid to Ripley. At the closing, both Hewitt's representative and Ripley's representative signed or initialed documents representing to Option One, Lake Superior, and Pioneer Abstract that there were no encumbrances against the property other than the IRS liens and the contract for deed. It is undisputed that Option One believed that by loaning Hewitt money against the mortgage note and paying off the encumbrances, it was getting a "first position mortgage."

The closing occurred on a Friday. The following Monday—February 3—Ripley recorded the quitclaim deed he had received from Hewitt on January 28. Option One recorded its mortgage on February 7. The same day, Ripley transferred the property to Bonnie Jean Piehl, trustee of the Ripley family trust. Piehl recorded the warranty deed on February 12.

The only payment Hewitt ever made toward either the Ripley mortgage or the Option One mortgage was the approximately $15,000 he received at the January 31 closing and immediately gave to Ripley. By June, the Ripley mortgage was in default in the amount of approximately $255,000, and the Option One mortgage was in default in the amount of approximately $300,000.

On June 23, Ripley brought a mortgage-foreclosure action against the property and requested a judicial determination that his mortgage was superior to the interest of any other party, including Option One. By answer and counter-claim, Option One alleged that because it had caused the encumbrances on the property to be paid at the January 31 closing, it was equitably subrogated to the interests of the IRS and the contract-for-deed vendor. It asserted that its interest in the property was there-

fore prior and superior to Ripley's to the extent of the funds paid at the closing to satisfy the encumbrances, or approximately $242,000. Option One requested a judicial declaration that its mortgage was superior to Ripley's.

Just before trial, Option One submitted an amended answer and counter-claim, alleging that Ripley had intentionally concealed the fact of his mortgage from Option One prior to the January 31 closing, Ripley knew Option One would not have closed its mortgage had it known of Ripley's mortgage, and Ripley's failure to act in good faith should cause his mortgage to be equitably subordinated to Option One's.

Following trial, the district court concluded Ripley's mortgage had priority over the Option One mortgage. The court found there was no evidence Ripley or his agents conspired to defraud Option One. Observing that Ripley had recorded his mortgage nearly a month before Option One's closing and that Option One, a professional lender, had not excused its negligent failure to discover Ripley's recorded interest, the court determined Option One had failed to show it was entitled to equitable relief. The court denied Option One's posttrial motion.

## ISSUE

Did the district court abuse its discretion in concluding Option One is not entitled to relief pursuant to either equitable subrogation or equitable subordination?

## ANALYSIS

Option One argues first that its mortgage should have priority over Ripley's by operation of the doctrine of equitable subrogation. Generally, the decision of whether to grant equitable relief is within the sound discretion of the district court and will not be reversed on appeal absent clear abuse. *Nadeau v. County of Ram-* *sey*, 277 N.W.2d 520, 524 (Minn.1979). A party seeking to invoke an equitable doctrine bears the burden of proving the doctrine's applicability. *Heidbreder v. Carton*, 645 N.W.2d 355, 371 (Minn.2002).

The Minnesota Recording Act establishes mortgage priority from the date of recording with the county recorder or the registrar of titles. Minn.Stat. § 507.34 (2004); *see Home Lumber Co. v. Kopfmann Homes, Inc.*, 535 N.W.2d 302, 304 (Minn.1995) (discussing mortgage priority). A purchaser who has actual, implied, or constructive notice of inconsistent outstanding rights of others is not a bona fide purchaser entitled to protection under Minnesota's Recording Act, and a previously recorded mortgage has priority over a subsequently recorded mortgage of which the subsequent purchaser has notice. *Minnesota Cent. R. Co. v. MCI Telecommunications Corp.*, 595 N.W.2d 533, 537 (Minn.App.1999), *review denied* (Minn. Sept. 14, 1999). A purchaser is charged as a matter of law with constructive notice of any properly recorded instrument. Minn. Stat. § 507.32 (2004). "Constructive notice is a creature of statute and, as a matter of law, imputes notice to all purchasers of any properly recorded instrument even though the purchaser has no actual notice of the record." *Anderson v. Graham Inv. Co.*, 263 N.W.2d 382, 384 (Minn.1978).

It is undisputed here that Hewitt's mortgage to Ripley was recorded on January 3, 2003, and that Hewitt's mortgage to Option One was recorded on February 7. Option One argues, and Ripley does not dispute, that it did not have actual notice of the Ripley mortgage. But actual knowledge is not necessary, because constructive notice of the mortgage was imputed to Option One when Ripley recorded it. Therefore, Ripley's mortgage is prior and superior to Option One's unless, as Option

One contends, equitable subrogation requires that the priority be reversed.

■■■ Minnesota has long recognized the doctrine of equitable subrogation. *See, e.g., Emmert v. Thompson,* 49 Minn. 386, 52 N.W. 31 (1892). Under the doctrine, a person who has discharged the debt of another may succeed in substitution to the rights and position of the satisfied creditor. *First Nat'l Bank of Menahga v. Schunk,* 201 Minn. 359, 363, 276 N.W. 290, 292–93 (1937); *Wells Fargo Home Mortg., Inc. v. Chojnacki,* 668 N.W.2d 1, 5 (Minn.App. 2003). "This equitable principle will be applied in the interest of substantial justice ... [when] one party has provided funds used to discharge another's obligations if (a) the party seeking subrogation has acted under a justifiable or excusable mistake of fact and (b) injury to innocent parties will otherwise result." *Carl H. Peterson Co. v. Zero Estates,* 261 N.W.2d 346, 348 (Minn.1977) (footnote omitted).

■■■ "Although [equitable] subrogation is a highly favored doctrine, it is not an absolute right, but rather, one that depends on the equities and attending facts and circumstances of each case." *Universal Title Ins. Co. v. U.S.,* 942 F.2d 1311, 1315 (8th Cir.1991). In general, the equity of the party seeking subrogation must be clear and substantial, and superior to that of other claimants. *Id.* Subrogation cannot be invoked where it would work an injustice, violate sound public policy, or result in harm to innocent third parties. *Id.* It is axiomatic that as an equitable doctrine, subrogation "aids the vigilant, and not the negligent." *Sinell v. Town of Sharon,* 206 Minn. 437, 439, 289 N.W. 44, 46 (1939) (quotation omitted).

■■■ Jurisdictions around the country have adopted three different approaches in determining whether to apply equitable subrogation under circumstances in which a third party holds a lien on the property at the time the second lender pays off the former encumbrance. The first approach reasons that actual knowledge of an existing lien precludes the application of equitable subrogation, but constructive knowledge does not. *See, e.g., Osterman v. Baber,* 714 N.E.2d 735, 739 (Ind.Ct. App.1999). The second approach bars the application of equitable subrogation when the party seeking subrogation possesses either actual or constructive notice of an existing lien. *See, e.g., Harms v. Burt,* 30 Kan.App.2d 263, 40 P.3d 329, 332 (2002).

The third approach, adopted by the Restatement, disregards actual or constructive notice and concentrates on whether the junior lienholder will be prejudiced by subrogation. *See* Restatement (Third) of Property: Mortgages § 7.6 (1997). Under the Restatement, a mortgagee will be subrogated when it pays the entire loan of another as long as the mortgagee "was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate." *Id.*

Minnesota has adopted the second approach (actual or constructive notice of an existing lien bars equitable subrogation) with the added criterion that when a sophisticated party—such as a professional lender—is seeking subrogation, it will be held to a higher standard for the purpose of determining whether it has acted under a justifiable or excusable mistake of fact in failing to duly investigate prior liens. Thus, in *Peterson,* the court held that because a "bank is a professional lender with knowledge of construction in progress giving rise to inchoate liens for contractors and materialmen ... [i]ts failure to consid-

er potential priority conflicts and to obtain subordination agreements from them ... cannot be deemed justifiable as an excusable mistake." 261 N.W.2d at 348. *See also Universal Title,* 942 F.2d at 1317 (noting that "Minnesota courts impose stricter standards on professionals than lay persons in assessing whether mistakes are 'excusable' for purposes of the doctrine of legal subrogation").

We conclude that *Peterson* is apposite and controlling here. In *Peterson,* a bank granted a loan against a second mortgage without considering whether existing mechanics' liens against the first mortgage might have priority. 261 N.W.2d at 347. The bank argued the second mortgage should be subrogated to the first mortgage and therefore granted priority over the mechanics' liens to the extent that the proceeds of the second loan were used to clear the balance of the first mortgage and delinquent taxes. *Id.* at 348. The supreme court rejected this argument, holding that the bank's failure to determine the existence of such liens was not excusable in light of its special financial expertise:

> The bank in this case has not demonstrated such equities in its favor. Unlike the unsophisticated individual wholly unaware of a judgment lien, the bank is a professional lender with knowledge of construction in progress giving rise to inchoate liens for contractors and materialmen. Its failure to consider potential priority conflicts and to obtain subordination agreements from them, as well as its failure to ascertain that its mortgagor was maintaining insurance in force, cannot be deemed justifiable as an excusable mistake.

*Id.*

In *Universal Title,* the Eighth Circuit Court of Appeals, applying Minnesota law, held that a title insurer's failure to perform a title search—which would have disclosed the existence of prior federal tax liens against the subject property—was not an excusable mistake of fact warranting application of its subrogation rights as against the government. *Id.* at 1320. The court wrote:

> We believe that the *Peterson* case indicates that the Minnesota courts impose stricter standards on professionals than lay persons in assessing whether mistakes are "excusable" for purposes of the doctrine of [equitable] subrogation, especially when the professional relationship arises out of a commercial transaction involving consideration. It is unreasonable to believe that the Minnesota Supreme Court would distinguish a title insurer from a bank; both are professional enterprises experienced in the area of secured transactions involving real property.

*Id.* at 1317. The court also stated:

> Universal is a professional enterprise, which is in the business of insuring marketable title to real property. Although Universal contends that it exercised prudent business practices in investigating the title to the ... property, it fails to explain what precautions it took or why it failed to discover the properly recorded federal tax lien. Its claim that it sought and received assurances from the seller that there were no liens, other than those discharged at closing, is patently insufficient.... Universal's inability to explain its failure to find the properly recorded federal tax lien is significant, because Universal had the burden of persuasion at trial of demonstrating its entitlement to subrogation. In light of the Minnesota Supreme Court's decision in *Peterson,* we hold that ... Universal's failure to detect the federal tax lien resulted from negligence, and therefore, it is not enti-

tled to be legally subrogated to the rights of the prior senior lienholders. *Id.* at 1318 (citation omitted).

 Here, Option One failed to conduct—on its own or through its agents—a second title search in the nearly two months between the first search and the January 31 closing. Such a search would have disclosed the existence of Ripley's mortgage interest in the property. We further observe, similar to the Eighth Circuit's conclusion in *Universal,* that in light of Option One's professional experience in processing loan applications and preparing mortgages for closing, its attempt to justify its ignorance of Ripley's interest with the assertion that it sought and received assurances from Ripley and Hewitt that there were no liens, other than those discharged at closing, is patently insufficient. *Id.* Because Option One offers only negligence to explain its failure to conduct the second search, we conclude it is no more entitled to be subrogated to the rights of the prior senior lienholders than was the bank in *Peterson* or the title insurer in *Universal Title.*

Option One contends the Minnesota approach frustrates the fundamental purpose of equitable subrogation by giving undue weight to the reasons the party seeking relief failed to acquire knowledge of prior recorded interests instead of focusing exclusively—as does the Restatement—on whether subrogation will satisfy the parties' original expectations without materially prejudicing other lienholders. Option One consequently urges that we adopt the Restatement position. It may well be, as Option One contends, that the Restatement would favor subrogating it to the prior lienholders' interests because doing so would presumably put both it and Ripley in their expected positions without prejudicing Ripley, who would be, in the words of the Restatement quoted by Option One, "no worse off than before the senior obligation was discharged." Restatement (Third) of Property: Mortgages § 7.6, cmt. a.

But this court is bound by the supreme court's holding in *Peterson* to consider the circumstances of Option One's failure to perform an updated title search. And *Peterson* further mandates that we hold the actions of a sophisticated party—such as a professional mortgage company or title company—to a stricter standard for the purpose of equitable subrogation and deny subrogation where the sophisticated party's negligence is inexcusable under the higher standard. Option One provided no excuse—save for simple oversight—for its failure to have a new title search performed in the nearly two months that elapsed between the title search performed on December 2, 2002, and the mortgage closing of January 31, 2003. This is simply insufficient, under *Peterson,* to excuse its failure to discover Ripley's prior interest.

In urging that we adopt the Restatement, Option One acknowledges that this court may not make new law or disregard an established position taken by the supreme court, but contends that because the supreme court has never specifically addressed whether the Restatement position should be adopted, this court may do so without exceeding its authority. But because applying the Restatement approach here would likely lead to a different result than would applying the *Peterson* approach, adopting the Restatement would, in fact, impermissibly create a new rule of law. *See St. Aubin v. Burke,* 434 N.W.2d 282, 284 (Minn.App.1989) (refusing to adopt new rule of law, noting under Minnesota Court of Appeals Internal Rules this court will make new law "[o]nly when there are no statutory or judicial

precedents to follow"), *review denied* (Minn. Mar. 29, 1989).

We are sympathetic to Option One's equitable position insofar as it appears to have unwittingly paid off encumbrances to Ripley's benefit, thereby reducing its own equity in the property. It also appears that because Ripley knew when he received the mortgage from Hewitt that Hewitt's interest in the property was significantly encumbered, subrogating Option One to the lienors' position would in fact put the parties in the position they expected to be in in the first place. But the fact remains that under *Peterson*, Option One's negligent failure to discover Ripley's interest is not excused and subrogation is barred.

Option One also argues the district court abused its discretion by failing to grant it equitable relief by subordinating Ripley's mortgage to its own. We disagree. Option One's theory of equitable subordination relies entirely on its assertion that Ripley and Hewitt fraudulently and deceptively concealed Ripley's interest from Option One in order to induce it to enter into a mortgage agreement with Hewitt. But the district court specifically found that there "is no evidence that Ripley or anyone on Ripley's behalf conspired with Hewitt or anyone on behalf of Hewitt to induce Option One or Lake Superior [Mortgage Company] or Pioneer Abstract to allow Ripley to obtain a first priority lien for his mortgage." This finding is supported by the record, and Option One provides no basis for us to disregard it now.

## DECISION

In order to warrant equitable relief under the factual circumstances of this case, Option One was required to demonstrate either that its failure to discover Ripley's properly recorded mortgage in the subject property was an excusable mistake of fact under the standard applicable to professional lenders or that Ripley and Hewitt fraudulently induced Option One to accept a mortgage from Hewitt. Because it has done neither, we hold that the district court properly denied Option One relief under both the doctrine of equitable subrogation and the doctrine of equitable subordination.

**Affirmed.**