*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1478**

In re the Receivership of United Prairie Bank,
Respondent,

vs.

Molnau Trucking LLC, et al.,
Defendants,

Granite Re, Inc.,
Appellant.

**Filed May 6, 2024
Affirmed
Schmidt, Judge**

Carver County District Court
File No. 10-CV-21-998

Thomas H. Boyd, Andrew J. Steil, Kyle R. Kroll, Winthrop & Weinstine, P.A.,
Minneapolis, Minnesota (for respondent)

Justine K. Wagner, Daniel R. Gregerson, Gregerson, Rosow, Johnson & Nilan, Ltd.,
Minneapolis, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Slieter, Judge; and

Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

This dispute arises from funds held by a receiver in a receivership action. Appellant

Granite Re, Inc. (Granite) and defendants Molnau Trucking LLC, et al. (Molnau Trucking)

executed a General Agreement of Indeminty, naming Molnau Trucking as bond principal on public works projects, which effectively communicated an intent to form a surety relationship.[1] Respondent United Prairie Bank (the bank) later lent Molnau Trucking $3,258,400, and they executed a security agreement that granted the bank a security interest in Molnau Trucking property as collateral. Molnau Trucking defaulted on the projects and Granite paid on the bonds. Molnau Trucking also defaulted on the bank's loan. Granite and the bank dispute who has the right to Molnau Trucking's bonded receivables. Granite appeals the district court's final judgment, arguing that the court should not have granted summary judgment to the bank. Because the bank secured its interest in Molnau Trucking's collateral before Granite's equitable subrogation claim attached, we affirm.

## FACTS

In March 2020, Molnau Trucking executed a General Agreement of Indemnity in favor of Granite, which stated that Molnau Trucking "has or may hereafter require suretyship upon certain bonds or obligations of suretyship and has applied or may hereafter apply to [Granite] to execute such instruments as surety." The General Agreement of Indemnity provided that Molnau Trucking "will pay, or cause to be paid, to [Granite], as and when each and every such bond or obligation is executed, the premium therefor in accordance with the regular scheduled rates of [Granite] then in force." The agreement gave Granite discretion to "decline to execute any bond." The General Agreement of

---

[1] A surety bond involves three indispensable parties: the surety, the obligee, and the obligor (or principal). *Stabs v. City of Tower*, 40 N.W.2d 362, 370 (Minn. 1949).

Indemnity was neither executed by Granite nor did it obligate Granite to bond or indemnify Molnau Trucking for any project.

In April 2020, the bank extended three loan agreements totaling over $3.25 million to Molnau Trucking. For each loan, Molnau Trucking and the bank executed a security agreement that granted the bank a security interest in Molnau Trucking property, including Molnau Trucking's accounts receivable, as collateral. That same month, to perfect its security interests in the collateral, the bank filed Uniform Commercial Code (UCC) Financing Statements with the Minnesota Secretary of State.

Molnau Trucking defaulted on the public-works projects. Granite received several claims from subcontractors and suppliers for losses related to the projects. Between February and April 2021, Granite issued several payment-and-performance bonds, which named Molnau Trucking as contractor and Granite as surety, and Granite paid over $740,000 on the bonded projects. In May 2021, the bank served a written default notice that informed Molnau Trucking of its default with the bank, and provided 30 days to cure, but default was not cured. In November 2021, Granite filed a UCC Financing Statement with the secretary of state listing the General Agreement of Indemnity as collateral.

In December 2021, the bank sued Molnau Trucking and its successor company, 3G Contracting Inc. The district court ordered judgment of more than $3.75 million against Molnau Trucking and in favor of the bank. The district court also appointed a limited receiver over property owned or previously owned by Molnau Trucking. The receiver identified more than $500,000 of collected and pending accounts-receivable funds. In December 2022, the receiver filed a motion that requested the district court to establish a

briefing schedule to allow Granite and any other interested party to assert their rights to receive payments of the net proceeds of accounts receivable collected or to be collected by the receiver. The district court heard the receiver's motion and issued a briefing schedule pertaining to the issue of the bonded receivables.

In February 2023, the bank and Granite filed cross-motions for summary judgment seeking the accounts receivable funds held by the receiver.[2] The district court denied Granite's motion, granted the bank's motion, and directed the receiver to distribute the accounts-receivable funds to the bank. The court reasoned that any alleged equitable right of subrogation that Granite had would date back to when it issued the payment-and-performance bonds, which occurred after the bank had already perfected its security interest in Molnau Trucking's accounts receivable.

Granite appeals.

## DECISION

Granite appeals the district court's final judgment, arguing Granite is entitled to the accounts-receivable funds held by the receiver under an equitable-subrogation theory. This court reviews a district court's summary-judgment decision de novo. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment. *Id.* Here, the parties dispute the application of relevant caselaw to the undisputed facts.

---

[2] While the summary-judgment motions were pending, the bank and 3G Contracting stipulated for dismissal with prejudice of claims against 3G Contracting.

**I.      The district court properly granted summary judgment to the bank.**

Under the doctrine of equitable subrogation, a party "who has discharged the debt of another may succeed in substitution to the rights and position of the satisfied creditor." *Ripley v. Piehl*, 700 N.W.2d 540, 545 (Minn. App. 2005). Equitable subrogation applies when "one party has provided funds used to discharge another's obligations if (a) the party seeking subrogation has acted under a justifiable or excusable mistake of fact and (b) injury to innocent parties will otherwise result." *Carl H. Peterson Co. v. Zero Ests.*, 261 N.W.2d 346, 348 (Minn. 1977).

Granite has not met the first prong of equitable subrogation—that it acted under a justifiable or excusable mistake of fact. *Id.* The bank perfected its security interests in Molnau Trucking's property, including the accounts-receivable funds, when the bank filed its UCC statements. That filing put Granite on notice that the bank had a secured interest in Molnau Trucking's property and assets. Despite that notice of the bank's interest in Molnau Trucking's property and assets, Granite paid on the bonds under its General Agreement of Indemnity with Molnau Trucking.

Granite points to no "justifiable or excusable mistake of fact" in paying on those bonds. *Id.* Regardless, any mistake of fact would not be justifiable or excusable because (1) the bank put the world, including Granite, on notice of the bank's interests with the UCC filing, (2) Granite had no obligation under the indemnity agreement to pay on the bonds, and (3) even if Granite did have an obligation to pay under the General Agreement of Indeminity, Granite did not execute the agreement to bind itself to it.

Given Granite's inability to establish any mistake of fact, much less one that was justifiable or excusable, the doctrine of equitable subrogation is not available to Granite. As such, the district court properly denied Granite's summary judgment motion and granted the bank's motion for summary judgment.

**II.** **The district court properly reasoned that, because the bank filed its UCC statements before Granite issued payment bonds, it retained priority over any interest that Granite could have acquired by equitable subrogation.**

Granite argues that the district court erred in applying the UCC first-in-time rules of prioritization to its equitable-subrogation claim. Even if Granite could meet the two equitable-subrogation prongs to open the door for a full analysis, we conclude such an argument would fail.

With certain exceptions that do not apply to this case, the UCC requires that a financing statement be filed to perfect a security interest. Minn. Stat. § 336.9-310(a) (2022). Although the doctrine of equitable subrogation survived the enactment of the UCC,[3] it does not apply to these circumstances. The bank argues that it perfected its security interest in Molnau Trucking's accounts receivable by filing a UCC Financing Statement before Granite's equitable-subrogation claim arose.

Minnesota law establishes that a surety's equitable-subrogation claim attaches as of the date of suretyship. *Barrett Bros. Co. v. St. Louis County*, 206 N.W. 49, 50 (Minn. 1925); *see also City of Minneapolis v. RW Farms, LLC*, No. A13-0309, 2013 WL 6839711, at *6 (Minn. App. Dec. 30, 2013) (holding that surety's interest attached when the surety

---

[3] *See In re J.V. Gleason Co.*, 452 F.2d 1219, 1221 (8th Cir. 1971).

issued a payment bond, which was before the creditor perfected its security interest).[4] "That equitable assignment to the surety of the principal's rights and remedies, when completed by the surety's performance of his principal's obligation, relates back to that earlier time when the surety first obligated himself as such." *Barrett Bros.*, 206 N.W. at 50 (quotation omitted).

Here, Granite "first obligated" itself and became the surety for Molnau Trucking, when it issued payment bonds beginning in February 2021. *See id.* The district court properly reasoned that after Molnau Trucking defaulted on the projects and Granite paid on the bonds, the right to equitable subrogation became choate and its priority dated back to February 2021—when the payment bonds were first issued. Before Granite obligated itself by issuing the payment bonds, the bank had filed a UCC statement in April 2020 which perfected the bank's interest in Molnau Trucking's accounts receivable as collateral for the loans totaling over $3.25 million. Therefore, under Minnesota precedent, Granite's subrogation attached in February 2021, well after the bank's interest attached—and was perfected—in April 2020. *See id.*; *RW Farms*, 2013 WL 6839711, at *6. Notably, Granite filed its own UCC Financing Statement with the secretary of state in November 2021 to try to perfect its interests. Under either equitable subrogation precedent or UCC law, Granite's interests in Molnau Trucking's accounts receivable must take a backseat to the bank's earlier perfected interests.

---

[4] We cite this nonprecedential opinion for its persuasive value. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

Granite insists that secured creditors like the bank that perfect their security interests are protected under the UCC as demonstrated in this case because the bank "has already received $824,064.15 in other collateral." We are not persuaded by Granite's argument to forgo the bank's interests because Granite's interest did not attach before the bank's interest attached. Stated differently, Granite chose to pay on the bonds—even though it had no obligation to do so under the General Agreement of Indemnity—at a time when the bank's interests had already been perfected by its UCC filing. As such, the bank retained priority over any interest that Granite could have acquired by equitable subrogation.

Accordingly, the district court properly denied Granite's motion for summary judgment, granted the bank's motion for summary judgment, and awarded Molnau Trucking's accounts-receivable funds to the bank.

**Affirmed.**