WILLIAM ELLIOTT v. LOUIS S. TAINTER and Others.[1]

January 23, 1903.

Nos. 13,321—(199).

**Subrogation—Payment of Lien.**

 Where a person having an interest in real property has paid money to satisfy a lien thereon to protect such interest, he is entitled, for the purpose of effecting substantial justice, to be substituted in place of the incumbrancer, and treated as an assignee of the lien, notwithstanding it had been discharged of record.

[1] Reported in 93 N. W. 124.

Lien Satisfied of Record.

Evidence considered, and *held* that a mortgage which had been satisfied and taxes which had been paid should be declared existing liens upon real property for the benefit of plaintiff, and made to precede in operation a subsequent mortgage owned by appellant, that had been advanced on the record by reason of the satisfaction of the prior discharged liens.

Appeal by defendant Louis S. Tainter from an order of the district court for Ramsey county, O. B. Lewis, J., denying a motion for a new trial. Affirmed.

*William Louis Kelly, Jr.*, for appellant.
*Cohen, Atwater & Shaw*, for respondent.

LOVELY, J.

Plaintiff brings this action, as executor of the will of Eliza B. Tiffany, to determine in her favor the adverse claim of defendants to certain real property, or, providing it should be held that the title of the property be in defendants, that a lien arising under a mortgage that had been satisfied of record, as well as taxes paid by the testatrix, be established, and plaintiff subrogated to the rights of such discharged lienholders.

The cause was tried to the court, who found that plaintiff, as executor, should be subrogated to the rights of the owner of the mortgage, which had been satisfied, and also to a further right of a lien of $635 for taxes which testatrix had paid, but of which the defendant Tainter had the benefit. Upon these findings, judgment was ordered for plaintiff. Motion for a new trial was denied. From this order, defendant Tainter appeals.

The equitable doctrine of subrogation is well established, and is not now open to question in this court. Where a person having an interest in real property has paid money to satisfy a mortgage or lien to protect his interest, he is entitled, when justice requires, to be substituted in place of a prior incumbrancer, and treated as an equitable assignee of the lien, notwithstanding it has been cancelled; the true principle being that, where money is so paid, it shall operate in the nature of an assignment of the cancelled lien, to continue it in force to subserve the ends of justice. This doctrine is applied when such lien has been discharged under a mistake

of the real situation, to save the party who has made the payment from loss if such payment and discharge would otherwise give the owner of the land an unconscionable and inequitable advantage over the person who had paid the same. Emmert v. Thompson, 49 Minn. 386, 52 N. W. 31; Heisler v. C. Aultman & Co., 56 Minn. 454, 57 N. W. 1053; London & N. W. Am. Mort. Co. v. Tracy, 58 Minn. 201, 59 N. W. 1001.

The controversy here arises upon the application of this rule to the facts, and the claim by appellant that material evidence in the case required the court to give him the benefit of one other security in "marshaling assets," upon the theory that plaintiff should first have resorted thereto, before the right of testatrix to subrogation should accrue.

Upon a review of the evidence, the following facts are embraced within a fair construction of the findings of the trial court, and are not open to dispute on this appeal: On February 17, 1892, one William W. Clark was the owner of the property in question. He had previously placed two mortgages thereon,—the first to the Northern Trust Company for $3,000, dated May 27, 1890, due five years thereafter, and a subsequent mortgage of $2,000 to the St. Anthony Park Company, dated February 17, 1891. At this time there were unpaid taxes and assessments on the land to the extent of $635. Clark, for the purpose of paying the taxes and the trust company mortgage, solicited a loan from testatrix of $4,500, to be secured by first mortgage on the property. He procured an abstract from the Ramsey County Abstract Company, and submitted it as a correct statement of the condition of the title. This abstract, through mistake, omitted any mention of the $2,000 mortgage to the St. Anthony Park Company, and misled Mrs. Tiffany, who would not have accepted the loan if she had to take the land for security for any greater sum than that named in her mortgage, or if her lien was to be subjected to a preceding lien; but, in reliance upon the abstract, and an examination thereof by her attorney, she was led to believe that the trust company mortgage was the only incumbrance upon the lot except the unpaid taxes. On this consideration the mortgage for $4,500 was taken by her, and such sum, which she furnished, was by agreement

applied to the liquidation of the trust company mortgage and the taxes, leaving a small balance of six or seven hundred dollars, which was handed over to Clark. It was understood between Clark and Mrs. Tiffany that the $4,500 was to be the only lien upon the property, notwithstanding the fact, unknown to her, and claimed to have been forgotten by Clark, that the $2,000 St. Anthony Park mortgage had been, by the satisfaction of the trust company mortgage, advanced to the place of the first lien on the land, and thus becoming a superior right, by record, over a new mortgage to Mrs. Tiffany.

About two weeks after the satisfaction of the trust company mortgage the St. Anthony Park mortgage, for $2,000, was assigned to Louis S. Tainter, defendant, in form absolute, but in fact as collateral security for an indebtedness owing from the St. Anthony Park Company to the firm of A. Tainter & Son, of which the assignee was a member. At the time of this assignment it was understood between the assignor and the firm of Tainter & Son that such mortgage was a second lien on the property, subordinate to a mortgage of "$4,000 or $4,500" then on the lot, although the name of the mortgagee was not known. Neither defendant, Tainter, nor any member of his firm, made an examination of the title of record, and did not know of the priority of the St. Anthony Park Company lien to the Tiffany mortgage until several years later. In September, 1894, Clark conveyed the property by warranty deed to defendant. This conveyance was given as collateral security for moneys to be thereafter advanced to Clark by defendant or his firm, who then understood that this property was subject to the Tiffany mortgage, and, to induce her to forbear from foreclosing her lien, for a time paid interest thereon; but a further examination of the records after a suit to foreclose the Tiffany mortgage had been commenced disclosed the true state of facts. Relying upon his supposed legal rights as the first incumbrancer of record, defendant Tainter foreclosed the $2,000 mortgage by advertisement, and the property was bid in by him.

So far as the facts above stated are concerned, the findings of the court cannot now be made the subject of any possible criticism. They are supported by the weight of evidence, save that

it is insisted that the court erred in finding that ·Clark had no actual knowledge of the state of the title at the time the abstract was furnished Mrs. Tiffany, and perpetrated a fraud not only upon her, but on the owner of the St. Anthony Park mortgage, or, in other words, that the mistake in accepting such mortgage by Mrs. Tiffany in reliance upon the abstract did not apply to Clark. While · it might, upon a hasty view of the evidence, seem improbable that Clark should have forgotten the $2,000 mortgage which he had made, yet he had executed many deeds of property in St. Anthony Park, which might, in connection with other facts, explain his seeming forgetfulness in this respect; and the evidence is such that upon the question of his honesty in this transaction, we cannot say that the trial court erred in its conclusion that he acted in good faith. But whether this be so, or not, there was no community of interest between Clark and Mrs. Tiffany which affected her by his knowledge. The right of subrogation does not depend upon contract. Neither was Clark occupying such a relation to Mrs. Tiffany that his act would bind her, and the use of the money which he received to pay off the incumbrances ahead of the $2,000 mortgage did not place appellant in any better position than he would have been had such liens remained, so that this contention is of no avail to defeat plaintiff's claim that the money furnished by testatrix was applied to pay off the prior trust company mortgage and discharge the taxes, and should not be allowed to inure to appellant's benefit by reason thereof, to give him an unconscionable and inequitable advantage, not intended by the testatrix, for which no consideration passed to her from appellant. We are clear that the doctrine of the cases we have cited above is in point, and sustains the conclusions of the trial court.

It appears from the evidence that, at the time Mrs. Tiffany's mortgage was executed, another lien, called the "Englewood Mortgage," was assigned to her as collateral security for her loan; and it is insisted that it was the duty of the court, for the benefit of the owner of the St. Anthony Park Company mortgage, upon the equitable doctrine applicable to the marshaling of assets, to require it to be sold before plaintiff's rights of subrogation could be made effective. From the evidence, we cannot determine that this

course should have been adopted, for defendant has not pursued the proper procedure to avail himself of the right to a marshaling and sale of this alleged asset for his benefit. There is an absence of any showing of its value. The court was not asked to pass upon that question, nor requested to make specific findings thereon, and did not do so. There having been no findings of fact in this respect, and the same not having been requested, we cannot on this review go further than to consider the question whether the findings of fact sustain the conclusion of law, which seems to be the necessary result which follows from the application of the principles we have already adopted.

Order affirmed.