## PILLSBURY ENGINEERING COMPANY v. CITY OF GRANITE FALLS.[1]

December 14, 1934.

No. 29,981.

*Shaw, Safford & Putnam* and *Matthew J. Levitt,* for appellant. *Paul D. Stratton* and *Daly & Barnard,* for respondent.

[1]Reported in 257 N. W. 658.

HILTON, JUSTICE.

In this action plaintiff sought to recover damages for breach of a contract to furnish complete engineering service in the enlargement and improvement of defendant's light and power plant. The case was tried to the court without a jury. After making findings of fact and conclusions of law, the court ordered that the action be dismissed on its merits. Plaintiff's motion for amended findings of fact and conclusions of law or a new trial was denied, and it appeals.

The assignments of error all call in question the correctness of the court's conclusion that the defendant "had the right to abandon and decline to proceed with the enlargement and improvement of its power plant, as it did, and as it has since persistently done, without thereby rendering itself liable in damages to plaintiff in any sum or amount whatsoever."

Whether or not the city had the right so to abandon the project depends upon the construction to be placed upon the contract entered into by the parties.

On February 28, 1929, plaintiff submitted to the city council of defendant a proposal which was on the same date accepted by the latter. By the contract thereby consummated plaintiff agreed to proceed at once (a) with all necessary surveys and investigations to determine the available water power; (b) to determine the necessary additional equipment required, together with a preliminary plan and estimate of costs of same; and (c) to compile a report of the physical value of the present power plant and electrical distribution system of defendant city. For the services enumerated in those three paragraphs plaintiff was to receive $750. The proposal of plaintiff, which later by acceptance became the contract, then contains this provision:

"If and when the city of Granite Falls makes the improvement decided upon, we are to receive 5% of the construction costs of the improvement made, to be paid as follows: 2½% of construction costs upon the receiving of bids (the amount paid under items A and B will be deducted from this payment); 1½% of estimate to be paid to the contractors from time to time; the balance upon

final completion and acceptance of the work by the engineer and owner."

What "complete engineering service" was to include was by the contract defined in seven paragraphs, the first three of which referred to services to be performed before actual construction started, *viz.:* (1) All surveys, investigations preliminary to the preparation of detail plans and specifications, preliminary reports, and estimate of costs, etc.; (2) "Attendance at all necessary council meetings and at not more than two mass meetings of the city;" (3) "Complete plans and specifications and estimates necessary for the receiving of bids, including attendance at opening and tabulating of same." The other four paragraphs provided for supervision of the work after construction started.

Pursuant to the above contract, plaintiff performed the work specified in paragraphs A, B, and C, and on April 18, 1929, presented its claim for $750 to the city council, which claim was allowed and paid by defendant. On May 6, 1929, the council of defendant called a special election to take place on May 28, 1929, for the purpose of voting on the issuance of bonds of the defendant in the sum of $90,000, which were to be used to defray the cost of the contemplated improvement to the light and power plant. The election resulted in the approval of the proposed bond issue, and on May 31, 1929, the city council, by resolution, authorized and directed plaintiff to prepare plans and specifications and also bid forms. On June 4, 1929, the city council having resolved to issue the bonds of defendant in denominations of $1,000 each, determined to advertise for the sale of said bonds. On July 1, 1929, the council accepted from plaintiff plans and specifications for the proposed power plant and then resolved to advertise for bids covering the improvement proposed, and plaintiff was required to furnish the forms therefor. On July 19, 1929, the council accepted the bid of two banks for the purchase of the bonds at par value. On July 25, 1929, the council met for the purpose of receiving and considering bids for labor and materials, and it was then determined that all bids which had been submitted and received should be tabulated by the plaintiff before any action was taken thereon. Plaintiff submitted such

tabulations on August 1, 1929, which were to be further considered at a session of the council to be called thereafter. On August 2, 1929, plaintiff presented its bill and demand for services for $1,600, which amount was paid by defendant.

The two banks whose bids for the purchase of the bonds had been approved applied to the council for leave to withdraw their bids, and on the 31st day of August, 1929, the application was granted and the bids for the bonds and the approval and acceptance thereof were canceled and rescinded. On the same day the city council by resolution duly adopted rejected all bids received for the construction work and enlargement of the power plant.

In addition to the above facts, the court found that if the proposed improvement project had been completed it would have cost approximately the sum of $90,000, and that to carry it to completion plaintiff would have been subjected to the additional expense of $1,000.

It is plaintiff's contention that under the contract and the court's findings it is entitled to recover five per cent of $90,000 (the total cost) less $1,000 (additional expense) less $2,350 (amount paid by the city) or $1,150. If the conclusion of the court hereinbefore quoted was erroneous, then the amount due the plaintiff would properly be as claimed. The terms of the contract, however, clearly indicate that the plaintiff was not, at the time the city abandoned the improvement plan, entitled to the five per cent of the construction cost, for, as hereinbefore quoted, plaintiff was to receive the five per cent only "if" the city "makes the improvement," and then the time of payment thereof by the city was to be "when" the city "makes the improvement." The engineering services rendered by plaintiff and paid for by defendant were preliminary to the actual construction work. The additional payment by the city of five per cent of the cost of construction was to be made "if and when the city of Granite Falls makes the improvement decided upon." It never made the improvement; hence no liability was incurred.

Plaintiff argues that the contract in question may be divided into two separate and divisible contracts, the first of which consisted of items A, B, and C only, and that everything done or to be done

62

thereafter was covered by the second contract; that the request of the defendant that plaintiff prepare plans and specifications and bid forms, tabulate the bids received and the payment by-the city of the $1,600 and the approval of the bond issue by the voters, showed an intention on the part of the city to make the ·improvement. We agree that the contract may properly be divided into two parts, but think that its language clearly places in the first division all the engineering services to be performed before commencement of construction, or at least before acceptance of bids therefor, and all services to be performed thereafter in the second division, which could only become operative in the event that the city made the improvement. Although bids had been submitted, they were never accepted by defendant, nor had plaintiff been instructed to proceed further. The city had, of course, the right to reject all bids as it did. Advertising for bids did not obligate the city to accept them or to advertise further. It follows that the second division of the contract had not become operative so as to subject defendant to a liability for profits that plaintiff would have made had the plans been carried out.

Affirmed.