CITIZENS STATE BANK, Appellant,

v.

RAVEN TRADING PARTNERS,
INC., et al., Respondents.

No. A08–1560.

Supreme Court of Minnesota.

July 22, 2010.

Michael L. Brutlag, Matthew R. Doherty, Brutlag, Hartmann & Trucke, P.A., Minneapolis, MN, for appellant.

Daniel W. Stauner, Plymouth, MN, for respondents.

Bradley N. Beisel, Kevin J. Dunlevy, Michael E. Kreun, Beisel & Dunlevy, P.A., Minneapolis, MN, for amicus curiae Minnesota Land Title Association.

OPINION

BARRY G. ANDERSON, Justice.

This appeal involves a dispute about the priority of two mortgages on the same property. At issue is whether appellant Citizens State Bank should be equitably subrogated to the position of two prior mortgagees and a mortgage held by Citizens given priority over a mortgage held by respondent Raven Trading Partners, LLC. Citizens brought an action in district court seeking an order declaring that, based on equitable subrogation, the Citizens mortgage recorded on May 9, 2005, has priority over a mortgage held by Raven that was recorded on April 29, 2005. The district court applied equitable subrogation and gave the Citizens mortgage priority over the Raven mortgage. Raven appealed, and the court of appeals reversed and remanded. Because we conclude that Citizens' negligence in waiting 38 days to resubmit the mortgage to the county recorder's office for recording was not an excusable or justifiable mistake of fact that warrants applying equitable subrogation, we affirm and remand.

On February 16, 2005, Feyereisen Enterprises, Inc., entered into a loan agreement with Citizens to borrow $165,000, and Feyereisen gave Citizens a mortgage on real property located in Hennepin County as security for the loan. The loan proceeds were applied to the balance due on two prior mortgages on the property. On February 21, 2005, Land Title, Inc., acting on behalf of Citizens, sent the Citizens mortgage to the county recorder's office to be recorded. But on March 14, 2005, the county recorder's office returned the mortgage to Land Title, Inc., unrecorded because the check for the mortgage registration tax was not for the proper amount.

On April 7, 2005, Feyereisen executed a mortgage on the property in favor of Raven, and the mortgage referenced the two prior mortgages on the property that had been satisfied by the loan from Citizens.[1] The Raven mortgage was recorded on April 29, 2005. On April 20, however, the Citizens mortgage was returned to the county recorder's office for recording. On May 9, 2005, subsequent to the recording of Raven's mortgage, the Citizens mortgage was recorded.

Two years later, Citizens filed a complaint in district court seeking declaratory judgment. Citizens argued that it should be equitably subrogated to the positions of the two prior mortgagees, because the Citizens loan was used to satisfy the prior mortgages, and thus the Citizens mortgage should be given priority over the Raven mortgage. The district court granted Citizens' motion for summary judgment and denied Raven's cross-motion for summary judgment.

The district court noted that Raven's mortgage was recorded prior to the Citizens mortgage and would normally take priority based on Minn.Stat. § 507.34 (2008). But the district court reasoned that equitable subrogation should apply for several reasons. Raven knew its mortgage would be subordinate; when Raven received its mortgage, it did not know of the Citizens mortgage, but believed that

---

1. Although the Raven mortgage referenced the two prior mortgages, it did not reference the Citizens mortgage. The Raven mortgage also encumbered, as additional security, a second parcel of property in Hennepin County.

there were two other mortgages on the property, to which the Raven mortgage was junior. In addition, the court reasoned that if it did not apply equitable subrogation, Raven would receive a windfall. The court also noted that Raven had security in an additional piece of property. Further, the district court viewed Citizens' delay in recording as excusable, and concluded that it would be unjust to give Raven priority over Citizens.

Raven appealed, and the court of appeals reversed and remanded. *Citizens State Bank v. Raven Trading, Partners, Inc.,* No. A08–1560, 2009 WL 1515585, at *1 (Minn.App. June 2, 2009). The court of appeals stated that a professional lender is held to a higher standard than an unsophisticated party, and Citizens' delay in failing to timely record its mortgage is not a "'justifiable or excusable mistake'" that should trigger application of equitable subrogation. *Id.* at *2. Therefore, the court held that the district court abused its discretion by granting Citizens summary judgment. *Id.* The concurring opinion agreed with the result based on the application of *Ripley v. Piehl,* 700 N.W.2d 540

(Minn.App.2005), but questioned the wisdom of *Ripley. Citizens,* 2009 WL 1515585, at *2–9 (Crippen, J., concurring). We granted Citizens' petition for review.

■■■ On appeal from summary judgment, such as here, we must determine whether there are any genuine issues of material fact and whether a party is entitled to judgment as a matter of law. *Wensmann Realty, Inc. v. City of Eagan,* 734 N.W.2d 623, 630 (Minn.2007). Where the material facts are not disputed, we review the district court's application of the law de novo. *Id.* We have previously said, however, that "[g]ranting equitable relief is within the sound discretion of the trial court [and] [o]nly a clear abuse of that discretion will result in reversal." *Nadeau v. County of Ramsey,* 277 N.W.2d 520, 524 (Minn.1979); *accord City of Cloquet v. Cloquet Sand & Gravel, Inc.,* 312 Minn. 277, 279, 251 N.W.2d 642, 644 (1977) ("The standard of review in nuisance cases and others involving equitable relief is whether the trial court has abused its discretion."). Therefore, for this appeal, we review the district court's application of equitable subrogation for abuse of discretion.[2] Under

2. We note that the question of the proper standard of review for a district court's decision on a motion for summary judgment regarding the applicability of equitable subrogation is not clearly settled in Minnesota. The court of appeals applied an abuse of discretion standard of review, *Citizens,* 2009 WL 1515585, at *2, Citizens' argues that such a standard is applicable here, and the dissent agrees, *see infra* at D–1. The court of appeals cited *Ripley v. Piehl,* 700 N.W.2d 540, 544 (Minn.App.2005). *Ripley,* like the dissent, cites *Nadeau v. County of Ramsey,* 277 N.W.2d 520, 524 (Minn.1979), for support. Our statement in *Nadeau,* however, was made in the context of considering whether a district court should have granted a plaintiff's post-trial motion to be reinstated as a deputy sheriff and enjoined the defendants from slandering him. *Id.* at 522, 524. None of our previous cases analyzing the applicability of equitable subrogation involving the priority of

mortgages discussed the applicable standard of review where there are cross-motions for summary judgment.

*Medica, Inc. v. Atlantic Mutual Insurance Co.,* suggests that a de novo standard of review might apply here. 566 N.W.2d 74 (Minn.1997). In *Medica,* there were cross-motions for summary judgment on whether a health maintenance organization had either conventional or equitable subrogation rights against an insurer that issued a general liability policy. *Id.* at 75–76. The district court granted summary judgment for the insurer, and held that the health maintenance organization had no subrogation rights. *Id.* We said that

[o]n appeal from summary judgment, this court reviews the record to determine whether there are any genuine issues of material fact and whether the lower courts erred in their application of the law. Be-

an abuse of discretion standard, we may overrule the district court when the court's ruling is based on an erroneous view of the law. *Montgomery Ward & Co. v. County of Hennepin,* 450 N.W.2d 299, 306 (Minn. 1990). A party that invokes an equitable doctrine has the burden of proving applicability of equity. *See Heidbreder v. Carton,* 645 N.W.2d 355, 371 (Minn.2002).

■■■■ Citizens argues that a strict application of the Minnesota Recording Act, Minn.Stat. § 507.34, would lead to an inequitable result by giving Raven priority over Citizens, and contends that the district court's application of equitable subrogation was proper. The Minnesota Recording Act gives protection to those who purchase property in good faith, for valuable consideration, and who first record their interests, by providing that

> [e]very conveyance of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate ... whose conveyance is first duly recorded.

Minn.Stat. § 507.34.[3] A "good faith purchaser" is someone "who gives consideration in good faith without actual, implied, or constructive notice of inconsistent out-

standing rights of others." *Anderson v. Graham Inv. Co.,* 263 N.W.2d 382, 384 (Minn.1978). The priority of a mortgage is based on the date of recording. *See* Minn. Stat. §§ 386.41, 507.34 (2008). The purpose of the Minnesota Recording Act is to protect recorded titles against the gross negligence of those who fail to record their interests in real property. *See Akerberg v. McCraney,* 141 Minn. 230, 233, 169 N.W. 802, 803–04 (1918). The Minnesota Recording Act has existed in some form since Minnesota's territorial days. *See* Act of Mar. 4, 1854, ch. 22, § 1, 1854 Minn. Laws 62, 62.

■■■■ At the time Raven recorded its mortgage, Citizens had already paid the two prior mortgages on the property, but Citizens had not recorded its own mortgage. Raven did not have actual, implied, or constructive notice of the Citizens mortgage, and Raven recorded its mortgage on the property prior to Citizens. It is undisputed that Raven was a good faith purchaser and that under Minn.Stat. § 507.34 Raven has priority over Citizens. The only question is whether we should apply equitable subrogation[4] to reverse that priority. To answer the question, we review the history of equitable subrogation in Minnesota, and determine its applicability to this case.

---

cause the parties do not dispute the relevant facts, a *de novo* standard of review is applied to determine whether the district court erred in its application of the law. *Id.* at 76 (citations omitted). Although our primary focus was on conventional subrogation, *see id.* at 77–79, we also reviewed the record under a de novo standard of review and concluded "that equitable subrogation [was] not appropriate under the facts and circumstances," *id.* at 79. Here we need not decide the proper standard of review because we would reach the same result concerning equitable subrogation were we to review it under an abuse of discretion standard or sole-

ly under our normal review on appeal from summary judgment.

**3.** "A mortgage is a conveyance of real estate for purposes of Minn.Stat. § 507.34." *Mid-Country Bank v. Krueger,* 782 N.W.2d 238, 244 (Minn.2010).

**4.** There are two types of subrogation, conventional and equitable. *Medica,* 566 N.W.2d at 77. Conventional subrogation is contractual and is based on an agreement between parties. *Id.* It does not apply here. Equitable subrogation has its origin in common law and equity. *See id.*

 Under equitable subrogation, when a person has discharged the debt of another with respect to real property, that person may, "when justice requires, . . . be substituted in place of a prior encumbrancer and treated as an equitable assignee of the lien." *First Nat'l Bank of Menahga v. Schunk*, 201 Minn. 359, 363, 276 N.W. 290, 292–93 (1937). In other words, that person may be substituted to the rights and position of the prior creditor. "Although [equitable] subrogation is a highly favored doctrine, it is not an absolute right, but rather, one that depends on the equities and attending facts and circumstances of each case." *Universal Title Ins. Co. v. United States*, 942 F.2d 1311, 1315 (8th Cir.1991); *accord Am. Sur. Co. v. State Farm Mut. Auto. Ins. Co.*, 274 Minn. 81, 85, 142 N.W.2d 304, 307 (1966). Equitable subrogation will not be applied when the parties' equities are equal or rights are unclear. *S. Sur. Co. v. Tessum*, 178 Minn. 495, 502, 228 N.W. 326, 329 (1929). We have also said that equitable subrogation "will be applied in the interest of substantial justice . . . where one party has provided funds used to discharge another's obligations if (a) the party seeking subrogation has acted under a justifiable or excusable mistake of fact and (b) injury to innocent parties will otherwise result." *Carl H. Peterson Co. v. Zero Estates*, 261 N.W.2d 346, 348 (Minn.1977).

Equitable subrogation has a long history in Minnesota and has existed alongside the Minnesota Recording Act. *See Emmert v. Thompson*, 49 Minn. 386, 391–92, 52 N.W. 31, 31–32 (1892) (noting that "the doctrine of [equitable] subrogation has been steadily growing and expanding in importance, and becoming more general in its application to various subjects and classes of persons"). Citizens argues that applying equitable subrogation here is consistent with how we have applied it in the past, and that equitable subrogation must be applied

in order to prevent Raven from obtaining an unjustified and inequitable windfall. Essentially, Citizens contends that the court of appeals ignored the history of equitable subrogation in Minnesota and underlying equitable principles by rejecting application of equitable subrogation. Accordingly, in determining whether the district court properly applied equitable subrogation, it is helpful to trace the history of equitable subrogation as we have applied it previously.

In *Geib v. Reynolds*, there was a dispute over whether a deceased mortgagee had accepted a new mortgage as a substitute for a former mortgage. 35 Minn. 331, 335–37, 28 N.W. 923, 924–25 (1886). Subsequent mortgagees argued that the cancellation of the first mortgage, due to the substitution, gave them priority in the property. *See id.* at 335–36, 28 N.W. at 924–25. We said that it must be presumed that the deceased mortgagee, had he known of the intervening mortgages, would not have discharged his mortgage. *Id.* at 337, 28 N.W. at 925. We focused on whether a mistake of fact had been made that may have induced a party to act, and said that

> if the holder of a mortgage take a new mortgage as a substitute for a former one, and cancel and release the latter in ignorance of the existence of an intervening lien upon the mortgaged premises, equity will, in the absence of some special disqualifying fact, restore the lien of the first mortgage, and give it its original priority.

*Id.* at 336, 28 N.W. at 924. We held that, under those circumstances, it was proper to "restor[e] the lien of the [deceased mortgagee], and giv[e] it priority over those of [the subsequent mortgagees]." *Id.* at 337, 28 N.W. at 925.

In *Gerdine v. Menage*, when deciding whether equitable subrogation should apply, our focus was again on whether there was a mistake of fact that had induced a party to act, but we specified an additional element to the analysis: whether applying equitable subrogation would cause harm to a third party. 41 Minn. 417, 420, 43 N.W. 91, 92 (1889). In *Gerdine*, the defendant held a first and second mortgage on two properties. *Id.* at 418–19, 43 N.W. at 91–92. He foreclosed on the second mortgage, and satisfied the first mortgage based on the mistaken belief that the foreclosure proceedings were valid, when in fact they were not. *Id.* at 419, 43 N.W. at 92. We said that "[i]t is a common thing for courts of equity to relieve parties who have by mistake discharged mortgages upon the record, and to protect them fully from the consequences when such relief would not result prejudicially to third persons." *Id.* at 420, 43 N.W. at 92. We concluded that the defendant's misunderstanding about the validity of the foreclosure proceedings was a mistake of fact because we viewed the defendant's mistake as one a "layman would naturally fall into—a mistake as to the condition of his title resulting from a misapprehension as to the correctness or regularity of proceedings upon foreclosure." *Id.* at 421, 43 N.W. at 92. Because the defendant satisfied the first mortgage based on his mistaken understanding, and the plaintiff was essentially unharmed by application of equitable subrogation, we held that equitable subrogation was appropriate. *See id.* at 421–23, 43 N.W. at 92–93.

Three years later in *Emmert v. Thompson*, we again applied a two-part analysis to determine whether equitable subrogation should apply. *See* 49 Minn. 386, 391, 52 N.W. 31, 31 (1892). In *Emmert*, a property owner intentionally induced a mortgagee into loaning money to pay off several liens on the property in exchange for a first priority mortgage on the property. *Id.* at 390, 392, 52 N.W. at 31–32. Unknown to the mortgagee that anticipated receiving a first priority mortgage, another recorded, junior mortgage in fact existed (the plaintiff's mortgage) and became the senior lien on the property when the mortgagee paid the other encumbrances on the property. *Id.* at 391, 52 N.W. at 31. We concluded that equitable subrogation was appropriate, and subordinated the plaintiff's mortgage to the interests of the mortgagee that had paid the first liens on the property. *Id.* at 393, 52 N.W. at 32. We reasoned that equitable subrogation "is enforced solely for accomplishing the ends of substantial justice; and ... it is only when an applicant has an equity to invoke, and where innocent persons will not be injured, that a court can interfere." *Id.* at 391, 52 N.W. at 31. Specifically, we said that a court "may relieve one who has acted under a *justifiable or excusable mistake of fact.*" *Id.* at 391, 52 N.W. at 32 (emphasis added). Although the plaintiff's junior mortgage was recorded and the mortgagee thus had constructive notice of the existence of the junior mortgage, we viewed the mortgagee and his agents' error in examining property records as "a mistake of fact" that did not bar the mortgagee from obtaining equitable relief. *Id.* at 392–93, 52 N.W. at 32. The mortgagor had intentionally concealed the truth about the existence of the junior mortgage. *Id.* at 392–93, 52 N.W. at 32.

Unlike the cases mentioned above, in *Wentworth v. Tubbs*, we concluded that equitable subrogation should not apply. 53 Minn. 388, 397–98, 55 N.W. 543, 545 (1893). In *Wentworth*, a mortgagor obtained a second mortgage in order to have the mortgagee pay certain mechanics' liens, but not all of them. *Id.* at 396, 55

N.W. at 544–45. We said that equitable subrogation

> can only apply where the payment operates as a purchase or equitable assignment, and not an extinguishment of a claim.... Whether the payment amounts to a purchase or an extinguishment is really a question of intention.... [T]he court finds that the agreement was that [the mortgagee] should pay the claims, and obtain releases therefor, and that the payment operated to extinguish them.

*Id.* at 397, 55 N.W. at 545 (emphasis omitted). We determined that the payment of the liens was merely to extinguish the claims, not to purchase them, and that in making the payment, the mortgagee had not operated under a mistake of fact. *Id.* at 397, 55 N.W. at 545 (citing *Emmert,* 49 Minn. at 391–92, 52 N.W. at 32). Significantly, we recognized that if we did not apply equitable subrogation some lienholders might receive a windfall; nevertheless, we still refused to apply subrogation: "The mere fact that, if subrogation is not allowed, the other lienors may be in better position, or, if allowed, may be in no worse position than if these claims had not been paid, is not, of itself, ground for subrogation." *Id.* at 398, 55 N.W. at 545.

One year after *Wentworth,* in *Heisler v. C. Aultman & Co.,* we again noted our statement in *Emmert* that a court may provide relief to a party that has "acted under a justifiable or excusable mistake of fact," and concluded that equitable subrogation should apply due to a mistake of fact where a mother failed to examine whether there were any judgments against her son. *Heisler v. C. Aultman & Co.,* 56 Minn. 454, 456–59, 57 N.W. 1053, 1053–54 (1894).

Unlike *Emmert,* where the mortgagee had constructive notice, but not actual notice of a recorded junior mortgage, the plaintiff-mortgagee in *London & Northwest American Mortgage Co. v. Tracy* knew of an existing junior mortgage. 58 Minn. 201, 203, 59 N.W. 1001, 1002 (1894). The mortgagors told the plaintiff that if the plaintiff loaned money to pay two prior mortgages, the plaintiff would receive a first priority mortgage, and a third mortgagee, the mortgagors' mother, would release her mortgage and accept a new mortgage that was subordinate to the plaintiff's. *Id.* at 203, 59 N.W. at 1002. The plaintiff relied on the misrepresentation and loaned the money, but the third mortgagee's mortgage was not satisfied of record, and the plaintiff foreclosed before the plaintiff knew the third mortgage had not been satisfied. *Id.* at 203, 59 N.W. at 1002. We said that "where [the prior lien] was discharged under a mistake of fact of the party paying the money to discharge it, to refuse to restore it for his protection would be permitting the second lien holder to profit at the expense of that party, and from his mistake." *Id.* at 204, 59 N.W. at 1002. We concluded that to permit the inducement would amount to a fraud if equitable subrogation did not apply, and the plaintiff was entitled to subrogation of the discharged mortgages unless the junior mortgagee could somehow demonstrate that she had changed her position and would be prejudiced. *Id.* at 204, 59 N.W. at 1002.

Our emphasis that there must be a mistake of fact was reinforced in *Elliott v. Tainter,* where a property owner executed two mortgages on property. 88 Minn. 377, 378–79, 93 N.W. 124, 124–25 (1903). The property owner sought a loan in order to pay the first priority mortgage and taxes on the property; the abstract on the property mistakenly omitted reference to a second mortgage, and the lender was led to believe that there was only one encumbrance on the property. *Id.* at 379, 93

N.W. at 125. Neither the lender nor her attorneys examined the title to the property; instead, they relied on the faulty abstract, and the lender paid the senior mortgage and the taxes. *Id.* at 379–80, 93 N.W. at 125. We noted that equitable subrogation should apply when a lien "has been discharged under a mistake of the real situation," and we affirmed the district court in subrogating the lender to the rights of the first priority mortgagee because the lender had not intended to give priority to the junior mortgage by satisfying the senior mortgage and paying the taxes. *Id.* at 378–81, 93 N.W. at 124–26.

In *Sucker v. Cranmer*, we held that equitable subrogation may be applicable in a different context: when a party pays taxes to protect that party's rights. 127 Minn. 124, 128, 149 N.W. 16, 18 (1914). In *Sucker*, property owners defaulted on a mortgage, and the plaintiff, a mortgage assignee, foreclosed the mortgage. 127 Minn. at 125, 149 N.W. at 16–17. The plaintiff purchased the property at a foreclosure sale, and while the year of redemption was running, the plaintiff paid taxes on the property that the property owners had previously agreed to pay, but did not pay. *Id.* at 125, 149 N.W. at 17. The plaintiff paid the taxes to avoid a statutory penalty, but failed to file a statutorily required affidavit due to "mistake and inadvertence." *Id.* at 125, 149 N.W. at 17. The property owners subsequently redeemed the property, but did not reimburse the plaintiff for the tax payments because of the plaintiff's failure to file the affidavit. *Id.* at 126, 149 N.W. at 17. The mortgage provided that if the property owners failed to pay the taxes, the plaintiff could pay the taxes and charge the property owners for that amount in the form of a lien. *Id.* at 126, 149 N.W. at 17. We noted that the foreclosure never became complete because the property owners redeemed the property and the mortgage

gave the plaintiff a right to make the payment and charge the property owners for that amount, so the plaintiff was entitled to personal judgment against the property owners. *Id.* at 126, 128, 149 N.W. at 17–18. Alternatively, we said that the plaintiff was entitled to equitable subrogation to the position of those parties to whom the property owners owed the taxes because "one, who has paid taxes to protect his own rights and not as a volunteer or intermeddler, may be subrogated to the rights of the state or of the one who had acquired the state's rights." *Id.* at 128, 149 N.W. at 18.

Unlike *Sucker*, where we applied equitable subrogation when a party had paid taxes to protect his rights, in *Kingery v. Kingery* we declined to apply equitable subrogation because "[t]here could be no belief on plaintiff's part that he would be subrogated to the two mortgages discharged so as to come ahead of the new first mortgage." 185 Minn. 467, 471, 241 N.W. 583, 585 (1932). The plaintiff in *Kingery* had orally agreed to help his mother obtain a new first mortgage in order to partially pay off two prior mortgages on her property; the plaintiff also agreed to pay whatever amount the new first mortgage failed to cover in order to discharge the two prior mortgages. *Id.* at 469, 241 N.W. at 584. We cited *Emmert, Wentworth,* and *Heisler,* and concluded that there was no mistake of fact about the situation, no inadvertence, and no fraud; the plaintiff had been the one who had negotiated for the new first mortgage for his mother, and he could not have believed that he would be subrogated to the two prior mortgages and take priority over the new first mortgage. *Id.* at 470–71, 241 N.W. at 585.

In *Hirleman v. Nickels,* we again analyzed whether there was a mistake of fact, but implicit in our analysis was the under-

standing that the mistake must have somehow induced the party to act. *See* 193 Minn. 51, 54–57, 258 N.W. 13, 15–16 (1934). In *Hirleman,* the plaintiff purchased a first priority mortgage on property and recorded the assignment. 193 Minn. at 52, 258 N.W. at 14. The original property owners sold the property, and the new owners subsequently executed a second mortgage on the property. *Id.* at 52–53, 258 N.W. at 14. The second mortgage expressly stated that it was subject to the first mortgage, and the second mortgage was recorded. *Id.* at 52–53, 258 N.W. at 14. The plaintiff agreed with the property owners to extend or renew the first priority mortgage for another three years, but the plaintiff was unaware of the existence of the intervening mortgage, and relied upon the representations of the transacting company. *Id.* at 53, 258 N.W. at 14. The plaintiff executed a satisfaction of the first mortgage and accepted a new mortgage for the same amount and the same interest rate as the original mortgage. *Id.* at 53, 258 N.W. at 14. Although the new mortgage indicated that the property was subject to the intervening mortgage, the plaintiff had no actual knowledge of the intervening mortgage and did not intend to release the lien of her first mortgage, but executed a satisfaction of her first mortgage in ignorance of the intervening mortgage. *Id.* at 53, 258 N.W. at 14–15. We concluded that "[t]here can be no doubt that the mortgage was mistakenly satisfied" and the plaintiff executed a satisfaction of her mortgage based on ignorance of the intervening mortgage. *Id.* at 54, 56, 258 N.W. at 15–16.

We then specifically looked at the nature of the mistake to determine whether equity should apply to correct the mistake. *Id.* at 56, 258 N.W. at 16. We noted that previously we had relieved parties who discharged mortgages due to a mistake and when no prejudice to third parties

would occur. *Id.* at 56–57, 258 N.W. at 16. In analyzing what constituted a "mistake," we suggested that the mistake must mislead a person to perform an action that, but for the error, the person would not have done. *Id.* at 57, 258 N.W. at 16. After analyzing the mistake the plaintiff made, we then noted that the intervening mortgagee would not be harmed if we applied equitable subrogation because she would receive that for which she bargained. *Id.* at 58, 258 N.W. at 16. In other words, we first analyzed whether there was a mistake, what type of mistake was made, whether that mistake induced the party to satisfy a prior mortgage, and then we proceeded to determine whether prejudice to a third party would occur.

Forty-three years later in *Carl H. Peterson Co. v. Zero Estates,* we again analyzed equitable subrogation. 261 N.W.2d 346 (Minn.1977). In *Peterson,* the First National Bank of Lakeville made a loan to the Brauns in 1970, secured by a mortgage on 152 acres owned by the Brauns. *Id.* at 347. The Brauns endeavored to construct a 300–by 176–foot horse barn on the property, with construction beginning in 1972. *Id.* In 1973 the bank made a second loan to the Brauns, and the bank received another mortgage on the property subsequent to the initial labor and materials provided for construction by mechanics' lienholders. *Id.* Part of the second loan was used to pay the balance on the first loan and delinquent taxes. *Id.* The mechanics' lienholders commenced actions to foreclose the liens in 1974; the barn collapsed in 1975. *Id.*

The bank argued that its 1973 mortgage should be equitably subrogated to its 1970 mortgage and given priority over the 1972 mechanics' liens to the extent that part of the second loan from the bank was used to pay off the first loan and delinquent taxes. *Id.* at 348. We stated that equitable sub-

rogation "will be applied in the interest of substantial justice . . . where one party has provided funds used to discharge another's obligations if (a) the party seeking subrogation has acted under a justifiable or excusable mistake of fact and (b) injury to innocent parties will otherwise result." *Id.* But we concluded that equitable subrogation should not apply. *Id.* We began by first analyzing whether there was a mistake involved, and distinguished the bank from the unsophisticated individual in *Heisler*, 56 Minn. 454, 57 N.W. 1053, who was unaware of a judgment lien. *Peterson*, 261 N.W.2d at 348. We reasoned that the bank was "a professional lender with knowledge of construction in progress giving rise to inchoate liens for contractors and materialmen" and concluded that the bank's failure to consider the intervening liens and obtain subordination agreements "cannot be deemed justifiable as an excusable mistake." *Id.* We then noted that if we applied equitable subrogation, the rights of innocent parties—the mechanics' lienholders—would be jeopardized.[5] *Id.* Weighing these factors, we concluded that equitable subrogation should not apply because the bank had not demonstrated equities in its favor. *Id.*

■ Citizens argues that our approach in Minnesota case law is consistent with the approach in Restatement (Third) of Property: Mortgages § 7.6 (1997) in analyzing when equitable subrogation should apply, and Citizens argues that we should adopt the Restatement's position. The Restatement provides:

(a) One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

(b) By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:

(1) in order to protect his or her interest;

(2) under a legal duty to do so;

(3) on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition; or

(4) upon a request from the obligor or the obligor's successor to do so, if the person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

*Id.* The comments to the Restatement note that "[s]ubrogation is an equitable remedy designed to avoid a person's receiving an unearned windfall at the expense of another." *Id.* cmt. a. Further, "[t]he holders of intervening interests can hardly complain about this result, for they are no worse off than before the senior obligation was discharged. If there were no subrogation, such junior interests would be promoted in priority, giving them an unwarranted and unjust windfall." *Id.*

We agree that, depending on all the circumstances, equitable subrogation may be applicable when a party satisfies a lien

---

**5.** We also noted that the mechanics' lienholders only had recourse to 39.5 acres that were subject to their liens, while the bank had undisputed priority over 112 acres. *Peterson*, 261 N.W.2d at 348.

in order to protect that party's interest, when a party is under a legal duty to satisfy a lien, or when there is a misrepresentation, mistake, duress, undue influence, or deceit. But we have specified that a mistake must be justifiable or excusable, not simply a mistake. In addition, we have not previously applied equitable subrogation based solely on a party expecting to receive a security interest in real property because of the promise of repayment and priority of the discharged mortgage. Although our approach may overlap in part with the approach suggested by the Restatement, there are differences, and we decline to wholly adopt the approach set forth in the Restatement.[6]

■ In Minnesota, a party seeking equitable subrogation has the burden of establishing that equities weigh in the party's favor, which also requires that no injury to innocent third parties will result if subrogation is applied. *See Peterson,* 261 N.W.2d at 348. There is no injury to a party if the party's position remains unchanged or the party received that for which the party bargained. *See, e.g., Hirleman,* 193 Minn. at 58, 258 N.W. at 16 ("She bargained for and secured a second mortgage.... She has just that now. She is entitled to nothing more.");

*Gerdine,* 41 Minn. at 421, 43 N.W. at 93 ("He had paid nothing, and his position remained unchanged."). Because Citizens is the party seeking equitable subrogation, Citizens has the burden of establishing that equities weigh in its favor.

■ We said in *Emmert* that a court "under a great variety of circumstances, may relieve one who has acted under a justifiable or excusable mistake of fact." 49 Minn. at 391, 52 N.W. at 32. And we have applied equitable subrogation to a variety of circumstances. But we conclude that it should not apply here. ·

It is undisputed that, here, there was no mistake of fact, no misrepresentation, and no fraud that induced Citizens to loan $165,000 to Feyereisen to pay the two prior mortgages. Citizens was not legally obligated to loan the money, and Citizens did not loan the money in order to protect its own interests. The initial mistake was that Land Title, Inc., acting on Citizens' behalf, did not send the correct amount of money for the mortgage registration tax when the Citizens mortgage was sent to the county recorder's office to be recorded. We may assume, without deciding, that this mistake might be justifiable or excusable. But our inquiry does not end there.

---

**6.** We also take this opportunity to clarify that contrary to the court of appeals' statement in *Ripley,* 700 N.W.2d at 545, that "actual or constructive notice of an existing lien bars equitable subrogation," we have not automatically rejected equitable subrogation when the party seeking subrogation has actual or constructive notice of an existing lien. For example, we have applied equitable subrogation where a mortgagee had actual notice of a recorded junior mortgage, but was induced by misrepresentation to loan money to pay two prior liens. *London & Nw. Am. Mortgage Co.,* 58 Minn. at 203, 59 N.W. at 1002. In addition, we have previously applied equitable subrogation where a party had constructive notice of recorded liens. *See, e.g., Elliott,* 88 Minn. at 379–81, 93 N.W. at 125; *Heisler,* 56

Minn. at 457–60, 57 N.W. at 1053–54; *Emmert,* 49 Minn. at 391–92, 52 N.W. at 31–32. Our focus has not been on whether a party had actual or constructive notice; rather, in most of our cases, we have looked primarily to whether a mistake was made, the nature of the mistake made, and whether the mistake induced the party seeking equitable subrogation to satisfy a lien. Then, to weigh the equities, we have analyzed whether applying equitable subrogation would harm innocent third parties. But as we noted in *Wentworth,* the mere fact that there may be a windfall to a third party does not in itself provide sufficient grounds for applying equitable subrogation. *See Wentworth,* 53 Minn. at 398, 55 N.W. at 545.

Citizens has not explained why it, or its agent, failed to promptly resubmit the mortgage to the county recorder's office when the mortgage was returned unrecorded on March 14, 2005. Citizens did nothing for 38 days, waiting until April 20, 2005, to again submit the mortgage for recording. Citizens simply neglected to act in a timely manner. In the meantime, Feyereisen executed a second mortgage on the property on April 7, 2005, and Raven had the mortgage recorded on April 29, 2005, taking priority over the Citizens mortgage that was finally recorded on May 9, 2005, based on the provisions of Minn.Stat. § 507.34.

In the end, whether to apply equitable subrogation is determined based on the circumstances present in each dispute. Here, we conclude that equitable subrogation should not apply to waive the normal recording requirements of Minn.Stat. § 507.34 when Citizens had notice of the unrecorded mortgage on March 14, 2005, and did nothing for 38 days. This delay in submitting the document for recording, given that Minnesota is a race-notice state, see Minn.Stat. § 507.34, is not justifiable or excusable, regardless of the sophistication of the mortgagee.[7] Once Citizens received notice that the mortgage was returned, Citizens had an obligation to expeditiously record the mortgage. Unlike previous cases where equitable subrogation applied, Citizens was aware of

its original mistake—not paying the correct mortgage registration tax—and had the opportunity to remedy it by timely resubmitting the mortgage with the correct payment. In previous cases where equitable subrogation applied, we were concerned with parties that unknowingly made one mistake, whether due to fraud or negligence, and who had no opportunity to correct that mistake once it had been made. See, e.g., Hirleman, 193 Minn. at 54, 56–57, 258 N.W. at 15–16 (satisfaction of a first mortgage in ignorance of existing intervening mortgage); Elliott, 88 Minn. at 379–81, 93 N.W. at 125–26 (property owner misled lender); London, 58 Minn. at 203, 59 N.W. at 1002 (mortgagee relied upon mortgagors' misrepresentation); Emmert, 49 Minn. at 390, 392, 52 N.W. at 31–32 (fraudulent inducement of mortgagee); Gerdine, 41 Minn. at 419, 43 N.W. at 92 (satisfaction of first mortgage based on the mistaken belief that the foreclosure proceedings were valid, when they were not).

The dissent concludes that we are "tak[ing] a step back" from "the path our court blazed approximately a century ago," and that we are adopting a restrictive analysis of "justifiable or excusable mistake of fact," because, according to the dissent, Citizens' mistake is not more serious than the mistakes plaintiffs in the past have committed.[8] Infra at D–4, D–5. On

---

7. We agree with the court of appeals that equitable subrogation should not apply here, but disagree to the extent that the court of appeals opinion suggests that Citizens must be held to a higher standard as a commercial lender in order to conclude that equitable subrogation should not apply. Citizens, 2009 WL 1515585, at *2 (citing Peterson, 261 N.W.2d at 348). It is not necessary for us to decide here whether the presence of a commercial lender is a factor to be considered in deciding whether to apply equitable subrogation.

8. The dissent also concludes that "[i]f equitable subrogation was appropriate in Sucker, ... it is appropriate here." Infra at D–5. Sucker, however, is not controlling under these circumstances. We said in Sucker that the issue was whether

a mortgagee, who at the foreclosure sale bid in the property for the full amount of the debt then due, but, while the year of redemption ran, disbursed money in payment of taxes and in redemption from tax sales, [has] no remedy if he has failed to file and furnish an affidavit in accordance with

the contrary, the dissent's position represents a departure from the principles in our previous cases. Plaintiffs in previous cases unknowingly committed a variety of errors, whether due to fraud or negligence, based on a mistake of fact. But the parties cite no precedent, and we have found none, where a plaintiff knowingly committed a second mistake when there was an opportunity to correct an underlying problem. To overlook Citizens' mistake in neglecting to more timely resubmit the mortgage with proper payment would require flexibility with respect to the requirements of Minn.Stat. § 507.34 to the point where the normal recording requirements of the statute become suggestions, not requirements. We believe that, based on the undisputed facts here, we must give effect to the statute that the Legislature enacted.

■ We recognize that if we do not apply equitable subrogation, Raven will receive a windfall because Raven anticipated that its mortgage on the property would have second priority. If we apply equitable subrogation and give the Citizens mortgage priority over the Raven mortgage, Raven would be in no worse position. But we need not apply equitable subrogation merely to prevent a party from obtaining a windfall or unjust enrichment.[9] *See Wentworth*, 53 Minn. at 398, 55 N.W. at 545.

■ We conclude that the facts here, in light of applicable law and principles of equity, do not support applying equitable subrogation. "[E]quity aids the vigilant, and not the negligent." *Sinell v. Town of Sharon*, 206 Minn. 437, 439, 289 N.W. 44, 46 (1939) (citation omitted) (internal quotation marks omitted). Contrary to the district court's conclusion, Citizens' mistake in failing to act for 38 days was not a

---

[the statute], when redemption is made by the mortgagor, as owner, without reimbursement for such tax payments, the mortgage containing a provision that the mortgagee may pay delinquent taxes and charge the amount to the mortgagor or the then owner, or at his option secure tax title to the property.

127 Minn. at 126, 149 N.W. at 17. Our basis for protecting the plaintiff's interest and excusing the failure to file an affidavit was two-fold: (1) the mortgage executed by the defendants gave the plaintiff the right to pay the taxes and charge the amount to the defendants, and the defendants had failed to perform their covenant with regard to the taxes; and (2) "[t]axes are a perpetual lien until paid." *Id.* at 127–28, 149 N.W. at 17–18. Here, unlike the plaintiff in *Sucker* that paid taxes on the property in order to protect his rights after a foreclosure sale and had an underlying right expressed in the mortgage to charge that amount to the defendants, Citizens did not pay taxes on the property. The grounds for applying equitable subrogation in *Sucker* are not present here.

9. The dissent states that "our prime concern in equitable subrogation cases is whether the 'restoration of the discharged lien may be made without putting the holder of the second

incumbrance in any worse position than if the prior lien had not been discharged' and protecting the expectations of those who pay off another's debt." *Infra* at D–4 (quoting *London*, 58 Minn. at 204, 59 N.W. at 1002). But in *London*, we said: "A prime consideration ... is that the restoration of the discharged lien may be made without putting the holder of the second incumbrance in any worse position ... where [the mortgage] was discharged under a mistake of fact...." *London*, 58 Minn. at 204, 59 N.W. at 1002. Consideration of the rights of a third-party lienholder, such as Raven, is *a* prime consideration, but not *the* prime consideration. The implication from the dissent's position is that there is a presumption that because we have liberally applied equitable subrogation in the past, equitable subrogation will apply so long as there is no harm to a third party. The first determination that must drive the analysis is whether the expectations of a party who paid the debt of another should be protected. Citizens did not discharge the mortgages under a mistake of fact, and had the opportunity to correct its mistake. It is not enough to invoke equity merely to prevent a windfall. *See Wentworth*, 53 Minn. at 398, 55 N.W. at 545.

justifiable or excusable mistake of fact. Because the district court's weighing of the equities and decision to apply equitable subrogation rested on an erroneous view of the law, we conclude that the district court erred in giving the Citizens mortgage priority over the Raven mortgage.

Affirmed and remanded.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

The court's decision rests on the notion that "equity aids the vigilant, and not the negligent," and therefore Citizens' failure to act for 38 days in resubmitting the mortgage registration tax does not warrant equitable subrogation. However, in our over-century-long application of equitable subrogation we have faced far more egregious conduct and have never found a mistake so unjustifiable or so inexcusable that equitable subrogation should not apply. I would hold that the district court did not clearly abuse its discretion when it applied equitable subrogation to Citizens' mortgage.

Most disturbing in this case is the court's abandonment of our standard of review. The purpose of appellate review is to determine whether a district court has made an error and not to try the case de novo. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 68 n. 2 (Minn.1979). The standard of review circumscribes the role of the reviewing appellate court and ensures uniformity and consistency in the law by precluding the retrial of a case on appeal. *In re the Welfare of M.D.O.*, 462 N.W.2d 370, 374 (Minn.1990). On appeal from summary judgment, we are to determine whether there are any genuine issues of material fact and whether either party is entitled to judgment as a matter of law.

*Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 584 (Minn.2003). While we apply a de novo review to legal questions, the decision of whether to grant equitable relief rests within "the sound discretion" of the district court and will not be reversed on appeal absent clear abuse of that discretion. *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 524 (Minn.1979) ("Granting equitable relief is within the sound discretion of the trial court. Only a clear abuse of that discretion will result in reversal."). An abuse of discretion may occur when the district court's findings are unsupported by the evidence or the applicable law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). An appellate court does not, however, reweigh the evidence or find its own facts. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988). Absent a clear abuse of discretion, we are not free to substitute our own judgment for that of the district court. *Arundel v. Arundel*, 281 N.W.2d 663, 667 (Minn.1979).

Subrogation is generally defined as the substitution of one person in the place of another with reference to a lawful claim or right. *See Rowe v. St. Paul Ramsey Med. Ctr.*, 472 N.W.2d 640, 644 (Minn.1991). The subrogee, the person discharging the debt, stands in the shoes of the subrogor, the original creditor, and acquires all of the subrogee's rights, in particular, the priority level of the creditor's debt. *See id.; Errett v. Wheeler*, 109 Minn. 157 163, 123 N.W. 414, 416 (1909). "Subrogation rests on the maxim that no one should be enriched by another's loss." *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 77 (Minn.1997) (citation omitted) (internal quotation marks omitted). Subrogation is not a legal remedy, but is an equitable remedy where the court weighs and balances the equities of the two parties and determines who *should* have the higher priority. *N. Trust Co. v. Consol. Elevator*

*Co.*, 142 Minn. 132, 138, 171 N.W. 265, 268 (1919) ("The doctrine of subrogation is of purely equitable origin and nature. Whether a case for its application arises in favor of a surety as against third persons depends upon the balance of equities between them and the surety."). We have consistently liberally applied the doctrine of equitable subrogation for over 100 years, even in the face of serious, unexplained mistakes by plaintiffs and their agents. *See, e.g., Hirleman v. Nickels*, 193 Minn. 51, 57–58, 258 N.W. 13, 16 (1934) (applying equitable subrogation when a party renewed their mortgage and negligently failed to check for intervening mortgages); *Gerdine v. Menage*, 41 Minn. 417, 419–21, 43 N.W. 91, 92 (1889) (applying equitable subrogation when the defendant satisfied a first mortgage and foreclosed a second mortgage on "the mistaken notion that [its] foreclosure proceedings were valid and effectual"). Further, we have been vigilant in avoiding unwarranted windfalls to junior lienholders because of the mistakes committed by those paying off senior debts, and we have steadfastly refused to elevate the priority of junior lienholders when they have not paid for the elevation in status. *Hirleman*, 193 Minn. at 58, 258 N.W. at 16 (noting that the party holding the second mortgage "bargained for and secured a second mortgage inferior to plaintiff's first mortgage," and "[i]t would be a sad reflection upon a court of equity if [the party holding the second mortgage] were to prevail").

Although we have stated the test for equitable subrogation using different terms, the concept behind equitable subrogation has always been that when a party pays the debt of another in an attempt to receive the creditor's priority level that payment shall operate as an assignment of the lien if the assignment can be accomplished without harming innocent parties. *See Elliott v. Tainter*, 88 Minn. 377, 378,

93 N.W. 124, 124 (1903) (stating that "the true principle" of equitable subrogation is that "where money is so paid, it shall operate in the nature of an assignment of the canceled lien, to continue it in force to subserve the ends of justice"). While our early case law was concerned with whether the claimant's mistake was justifiable or excusable, and we have routinely recited that language, we have never found the nature of the mistake to be dispositive. Instead, our prime concern in equitable subrogation cases is whether the "restoration of the discharged lien may be made without putting the holder of the second incumbrance in any worse position than if the prior lien had not been discharged" and protecting the expectations of those who pay off another's debt. *London & Nw. Am. Mortgage Co. v. Tracy*, 58 Minn. 201, 204, 59 N.W. 1001, 1002 (1894).

The district court determined that Raven does not have a superior equitable claim that should prevent the application of equitable subrogation. The district court noted that Raven bargained for and received a mortgage that was subordinate to $164,000 in existing encumbrances, Raven's security interest encumbers other property than the property that is the basis of this litigation, and Raven would receive a windfall by being elevated to first priority. Citizens, though admittedly inadvertent, is seeking the application of a doctrine created to aid those who inadvertently fail to secure their priority. While Citizens failed to utilize due care, it cannot be said that Citizens' mistake is more serious than the mistakes committed by plaintiffs in cases in which we have applied equitable subrogation. In *Sucker v. Cranmer*, we applied equitable subrogation in favor of a plaintiff who, without any justification or excuse, negligently failed to file a statutorily required affidavit that resulted in the plaintiff's lien never becoming effec-

tive. 127 Minn. 124, 125, 128, 149 N.W. 16, 17–18 (1914). Here, Citizens, in recording its mortgage, attempted to pay the required mortgage registration tax but sent an incorrect amount. Upon being notified that the mortgage had not been recorded because of the failure to submit the correct mortgage registration tax amount, Citizens, within 38 days, again recorded the mortgage submitting the correct tax. If equitable subrogation was appropriate in *Sucker*, a case in which the claimant of the doctrine never submitted the statutorily required affidavit, it is appropriate here, a case in which Citizens submitted the statutorily required registration tax within 38 days of being notified that its mortgage had not been recorded. However, in direct conflict with *Sucker*, the court, without explanation or reason, adopts a restrictive "justifiable or excusable mistake of fact" analysis. As the Restatement[1] and other courts[2] have begun to follow in the path our court blazed approximately a century ago, we take a step back.

Here, the district court identified the equitable interests, weighed them, and determined that equity favored Citizens. However, the court has chosen to apply its own judgment and not defer to the district court's equitable findings. While the court may be inclined to weigh the equities differently, the responsibility of making equitable determinations lies with the district court. *See Arundel*, 281 N.W.2d at 667 ("While we are less than convinced that a higher award would not be appropriate . . ., we are not free to substitute our judgment for that of the trial court absent a clear abuse of its discretion."). Our limited role is to determine if the district court clearly abused its discretion by reaching a decision that is unsupported by the evidence in the record. *Pikula*, 374 N.W.2d at 710 ("The trial court's findings must be sustained unless clearly erroneous."). When there is competent evidence in the record supporting the district court's determination, as there is here, the district court has not abused its discretion. By substituting our judgment for that of the district court, we have abandoned our standard of review and usurped responsibilities properly left in the able hands of the district court. Therefore, I respectfully dissent.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Page.

---

1. The Restatement says, "One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment." Restatement (Third) of Property: Mortgages § 7.6 (1997).

2. The Washington Supreme Court has found that public policy concerns weigh in favor of a liberal approach to equitable subrogation. *Bank of Am., N.A. v. Prestance Corp.*, 160 Wash.2d 560, 160 P.3d 17, 28 (2007). Equitable subrogation helps stem the threat of foreclosure by serving as an incentive for one to advance sums to those threatened by foreclosure, and can save billions of dollars by reducing title insurance premiums that are passed on to homebuyers. *Id.* at 580–81, 160 P.3d 17; *see also* Grant S. Nelson & Dale A. Whitman, *Adopting Restatement Mortgage Subrogation Principles: Saving Billions of Dollars for Refinancing Homeowners*, 2006 BYU L. Rev. 305, 359 (2006).